[No. 4296.   Decided October 1, 1902.]

VICTOR ANDERSON et ux., Appellants, v. WALLACE LUMBER AND MANUFACTURING COMPANY, Respondent.

CONTRACT FOR SALE OF LAND — FORM.

A contract for the conveyance of land, in order to be enforceable in equity, need not be executed and acknowledged with all the solemnity of a conveyance, inasmuch as agreements to convey do not come within the terms of Bal. Code, §§ 4517, 4518, which prescribe that all conveyances of real estate and all contracts creating or evidencing any incumbrance thereon shall be by deed, and that such deed shall be signed and acknowledged.

SAME — MUTUALITY OF AGREEMENT — SIGNATURE OF VENDEE.

Where a contract for the conveyance of land, though purporting to be a mutual agreement, was signed by the vendor only, but had been drawn up on the letter head of the vendee by its secretary, who wrote the vendee's name in the body of the instrument, and gave the vendor a letter to the president of the vendee company, signed by the secretary, requesting the payment of the balance of the purchase price to the vendor in fulfillment of the contract, the memorandum of sale must be held as showing a binding obligation as to both parties.

CORPORATIONS — AUTHORITY OF OFFICERS.

When a corporation permits certain officers to manage its business, it is responsible for their acts, even in the absence of the action of the board of trustees, unless it is affirmatively shown that their acts were unauthorized.

SPECIFIC PERFORMANCE BY VENDOR — ENFORCEMENT OF PURCHASE PRICE.

Specific performance of a contract for the sale of land is enforceable against the vendee by suit in equity for enforcement of the purchase price by collection of the money from any of defendant's property, or by order of sale as upon execution.

Appeal from Superior Court, King County.—HON. BOYD J. TALLMAN, Judge. Reversed.

*George E. Wright,* for appellants.

*Ira Bronson,* for respondent.

The opinion of the court was delivered by

REAVIS, C. J.—Suit by the vendors against the vendee for specific performance of contract to purchase timber land. At the trial the plaintiffs introduced evidence, documentary and oral, tending to prove the following facts: That plaintiffs were at the times mentioned husband and wife; that defendant is a domestic corporation carrying on the business of manufacturing, buying and selling and dealing in all kinds of lumber and logging, operating mills, acquiring timber, and doing all business connected therewith; that there were four trustees who exercised the pow-

ers of the corporation, the by-laws making no provision for a general manager; that A. H. Gould, the vice-president and a trustee, was superintendent of the mills and camps; that there were only four trustees, although five were provided for in the articles of incorporation; that these trustees were F. D. Black, president; A. H. Gould, vice-president; George G. Startup, secretary, and C. H. Black, treasurer; that Mr. Gould negotiated with plaintiffs for the purchase of the timber land described in the memorandum in writing hereafter set out; that after such negotiations the plaintiff, Victor Anderson, by direction of Gould, went to the office of the defendant, a contract to buy the land was made, and by direction of Gould the secretary wrote out the memorandum of sale which was signed by Anderson, the original retained by the defendant, and a copy thereof written out by the secretary given to Anderson, and the $25 mentioned therein paid to Anderson; that a power of attorney, given by Clara Bell Anderson, the wife, was held by Victor Anderson, and he was duly authorized to convey the premises; that a letter to President Black was then given to Anderson, who thereupon presented it to the president, who assented to the transaction, had the deed to the premises drafted by his attorney at his office, and himself subscribed the deed as one of the witnesses; that said deed was executed by plaintiffs, and acknowledged, and then taken by plaintiffs, with direction from the president to return with the deed the following day, when the president would go with Anderson, and examine the records of title, and, if they were satisfactory, receive the deed, and pay the remainder of the purchase price; that the next day Anderson went to the office, and Mr. Gould, for the defendant, refused to receive the deed, or pay the remainder of the purchase price for the land; that all the trustees had knowledge of the contract, and approved the same.    It

was admitted that the records showed clear title in the land in plaintiffs.    The memorandum is in the following form:

"F. D. Black, President.      George G. Startup, Secretary.
A. H. Gould, Vice-President.   C. H. Black, Treasurer.
We own and log our timber.
Wallace Lumber and Manufacturing Co.
Manufacturers of
Lumber, Lath and Shingles..
Fine Grades of Cedar and Fir a Specialty.
Wallace, Wash., Sept. 17, 1900.

This is to certify that I have this day sold to the Wallace Lbr. & Mfg. Co. of Wallace, Wash., my claim, namely, the S. E. ¼ of Section 15, R. 8 East, Town. 28, and also to acknowledge the receipt of $25.00 (Twenty-five dollars) in hand paid as part payment of purchase price, namely, $3,-000.00 (Three thousand dollars), and it is understood that balance to be paid in ten days from date, if records appear all right.                        Victor Anderson."

The letter delivered to the president was in the following form:

"F. D. Black, President.      George G. Startup, Secretary.
A. H. Gould, Vice-President.   C. H. Black, Treasurer.
We own and log our timber.
Manufacturers of
Lumber, Lath and Shingles.
Fine Grades of Cedar and Fir a Specialty.
Wallace, Wash., Sept. 25, 1900.

Mr. F. D. Black:

Mr. Victor Anderson comes to you to settle up.    We promised to let him know last Saturday but did not make your connections.    Will you kindly take the matter up with him and settle as per agreement—$3,000.00, less $25.00 advance payment for which we hold receipt.    Hope to see you up this way soon.    Yours truly,

G. G. Startup."

At the conclusion of plaintiff's case a motion to dismiss was sustained, and the court entered a decree in favor of defendant.

Only three questions seem material in the determination of the points raised here.

1.  Is the memorandum sufficient to establish an enforceable contract between the parties?   It is maintained by counsel for respondent that such contract for the conveyance of real property, to be valid, must comply in its form with §§ 4517 and 4518, Bal. Code, which prescribe that all conveyances of real estate, and all contracts creating or evidencing any incumbrance thereon, shall be by deed, and that such deed shall be signed and acknowledged. It may be observed that these sections relate only to conveyances, and to contracts creating or evidencing incumbrances; they do not necessarily include agreements to convey.  In *Langert v. Ross,* 1 Wash. 250 (24 Pac. 443), a contract in similar form, signed by the vendor, was held a valid agreement to convey real estate.   Again in *Vail v. Tillman,* 2 Wash. 476 (27 Pac. 76), was a similar conclusion.   In *Baker-Boyer National Bank v. Hughson,* 5 Wash. 100 (31 Pac. 432), the objection was made "that the contract for a deed for the real estate which was to be conveyed to the defendants, for the part payment was not acknowledged and was, therefore, void."   The court said:

"Under the decisions of this court this objection is without force, as we have held in several cases that a contract for the conveyance of real estate was entirely valid without any acknowledgment," citing the two above-mentioned cases.   In *Edson v. Knox,* 8 Wash. 642 (36 Pac. 698), it was held that a deed without acknowledgment could be maintained as a valid contract for a deed.   In *Kleeb v. Bard,* 7 Wash. 41 (34 Pac. 138), the validity of a contract for sale of standing timber was challenged.   The court there observed:

"As to the Perry tract, conceding that an executory contract to sell standing timber to be cut and removed by the purchaser is a contract for the sale of an interest in land,

and therefore within the statute of frauds (1 Warv., Vend., p. 175; *Owens v. Lewis,* 46 Ind. 488), still we are unable to see why the contract which respondent held from the Perrys did not meet this requirement.    True, it was not a deed, but it is not necessary that a contract to sell land, as such, be a deed."

It may be concluded that the repeated consideration of this court of the two sections of Ballinger, *supra,* confines their effect to proper requisites for evidence of legal title and incumbrances, and does not change the requirement for agreements evidencing contracts enforceable in equity under the statute of frauds.    It is objected that the defendant here is the party to be charged, and that the contract was not signed by defendant, or any one on its behalf.    Assuming, for the present, that authority to sign was vested in the secretary, the signature seems to fall directly within the rule stated in *Tingley v. Bellingham Bay Boom Co.,* 5 Wash. 644 (32 Pac. 737).    There the memorandum was not signed by the defendant corporation, but the instrument was in the handwriting of the agent.    The memorandum was as follows:

"This agreement, entered into this 20th day of August, 1890, by and between the Bellingham Bay Boom Company, of Fairhaven, Washington, party of the first part, and J. H. Moore and others, respectively, whose names are hereto subscribed, parties of the second part, witnesseth," etc.

And the court observed:

"It is a well established rule of law that a contract is signed within the meaning of the statute, whether the name of the party to be charged appears at the bottom, top, middle or side of the paper.    *Drury v. Young,* 58 Md. 546; *Clason v. Bailey,* 14 Johns. 487; *Barry v. Coombe,* 1 Pet. 640; 1 Reed, St. Frauds, § 384."

But it is contended that it must be shown that the name of defendant appears in some appropriate way to have been

put in intentionally, to authenticate the memorandum. Conceding this, it is shown here that the agent wrote the memorandum, and wrote the name of defendant as vendee in addition to, and below, the printed name of defendant; and these facts are aided by the letter to President Black, signed by the agent.  There can be no reasonable doubt that the vendor was bound by the memorandum, which purported to be a mutual agreement.  The suggestion that it is in effect an option given by plaintiffs to defendant is not substantial.  It purports to be an express agreement to convey the timber land, was so accepted by the defendant, and was so construed by the parties thereto; and a deed was thereafter drafted in pursuance thereof, by direction of defendant's officers, and executed by plaintiff; but defendant refused to receive the same.

2.   The authority of defendant's officers to make the agreement is challenged by defendant chiefly upon the ground that the trustees did not act as an official board, but as individuals only.  It appears there were four trustees. Each had knowledge of, and three of them actively participated in, the transaction—the president, vice-president and superintendent, and the secretary.  The principle stated in *Carrigan v. Port Crescent Improvement Co.*, 6 Wash. 590 (30 Pac. 148), is applicable here, and is approved, that is, when a corporation allows certain officers to manage its business, particularly, as here, such as president, vice-president, and superintendent, it must be responsible for their acts unless it affirmatively shows they were unauthorized.   Upon the facts as they now appear, the agreement evidenced by the memorandum was authorized by defendant.

3.   The only remaining question is as to plaintiffs' right to enforce the contract by specific performance.  The rule seems to be well supported by authority, and founded in

sound principle, that equity will enforce such contracts as well against the vendee as the vendor.   In *Hogan v. Kyle,* 7 Wash. 595 (35 Pac. 399, 38 Am. St. Rep. 910), this rule was approved, and it was said:

"In fact, the prevailing modern authority is that, in a case of this kind the vendor can either sue at law for damages or resort to equity for specific performance."

This right is based upon mutuality in the contract. Warvelle on Vendors thus states the principle:

"A suit in equity against the vendee to compel a specific execution of a contract of sale, while in effect an action for the purchase money, has nevertheless always been sustained as a part of the appropriate and acknowledged jurisdiction of such court, although the vendor has, in most cases, another remedy by an action at law upon the agreement."    Warvelle, Vendors, p. 779, and cases cited.

See, also, Pomeroy, Contracts (2d ed.), p. 6.   The performance on the part of the defendant here required is the payment of the purchase price, which may be enforced by collection of the money from any of defendant's property, or enforced by order of sale as upon execution.

The judgment is reversed, and the cause remanded for a new trial consistent with the foregoing expressions.

HADLEY, ANDERS, FULLERTON, WHITE and MOUNT, JJ., concur.