[No. 4562.  Decided February 24, 1904.]

W. J. SHERLOCK *et al., Appellants,* v. HENRY VAN ASSELT
*et al., Respondents.*[1]

VENDOR AND PURCHASER—SALE BY AGENT—SPECIFIC PERFORM-
ANCE—AUTHORITY OF AGENT—SUFFICIENCY OF EVIDENCE—FIND-
INGS—REVIEW.  In an action for the specific performance of an
agreement to convey land, made on behalf of an aged couple by
their son upon a partial payment of $100 to the son, findings in
favor of the defendants will not be disturbed where the prepon-
derance of the testimony is to the effect that the son was not
authorized to make the sale, and the $100 paid was not accepted
but was tendered back by the son; since findings on conflicting
evidence will not be disturbed unless against the weight of the
evidence.

SAME—STATUTE OF FRAUDS—POSSESSION TO TAKE CASE OUT OF
OPERATION OF STATUTE.  In such a case specific performance
should not be decreed where the contract was not acknowledged
as required by the statute of frauds, and the plaintiffs did not
enter into possession of the premises so as to take the case
out of the operation of the statute.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered June 9, 1902, upon the find-
ings and decision of the court in favor of the defendants,
dismissing on the merits an action for the specific per-
formance of a contract to sell land.    Affirmed.

*Allen, Allen & Stratton,* for appellants.

*McClure & McClure,* for respondents.

PER CURIAM.—Plaintiffs, Walter J. Sherlock and Brid-
get Sherlock, his wife, commenced this action in the supe-

[1]Reported in 75 Pac. 639.

rior court of King county against defendants, Henry Van Asselt and Jane Van Asselt, husband and wife, to compel the specific performance of a contract for the sale of a five-acre tract of land, situate in that county. The trial court made the following findings of fact:

"(1) That on or about June 25, 1900, the defendants agreed to sell to the plaintiff W. J. Sherlock ten (10) acres of land situated in King county, Washington, being a part of the Henry Van Asselt donation claim, which ten (10) acres is particularly described as follows, to wit: beginning at a point being the intersection of the southeast corner of a tract or parcel of land known as that of and being occupied by the Denny Clay Co. and the west boundary line of the county road, thence westerly 1416 feet to the east bank of the Duwamish river, thence southerly along said river bank 308 feet, thence easterly 1416 feet to the county road, thence northerly 308 feet along the west line of said road to the place of beginning or commencement, comprising or containing ten (10) acres. And that on said June 25, 1900, defendants signed and acknowledged a deed conveying said ten (10) acres to plaintiff W. J. Sherlock, and gave said deed to J. H. Van Asselt for delivery to said Sherlock upon payment of the purchase price, or the sum of thirty-five hundred dollars ($3,500).

"(2) That thereafter the said J. H. Van Asselt executed and delivered to the said W. J. Sherlock a certain agreement in writing, in words and figures as follows, to wit: "'$1,500.          Seattle, Washington, June 30th, 1900.

"'Received from Walter J. Sherlock the sum of fifteen hundred ($1,500) dollars, being a part of the purchase price of the ten (10) acres lying to the south of the Denny Clay Tract in the Van Asselt donation claim, King County, Washington, the balance of two thousand ($2,000) dollars to be paid upon J. H. Van Asselt's furnishing an abstract of title and executing a deed to the said ten acres. The said abstract and deed to be furnished within ten days at which time the said Van Asselt is to give to the said Sherlock a lease on the five (5) acres lying to the south and adjoining the said ten (10) acres, for the period of one

year, said lease to take effect on the 1st day of January,
1901, together with a bond to purchase the said five (5)
acres at any time between the 1st day of January, 1901,
and the 1st day of July, 1901, and the said lease and bond
to expire on said day, said lease to provide for a monthly
rental not to exceed $20 per month.

                                              " 'J. H. Van Asselt.'

"(3) That the said ten (10) acres mentioned in the said
agreement set forth in the last preceding paragraph is the
same ten (10) acres mentioned and described in paragraph
1 hereof.

"(4) That the said J. H. Van Asselt was not on said
June 30, 1900, or at any time before or after June 30,
1900, authorized or empowered by the defendants Henry
Van Asselt or Jane Van Asselt, or either of them, to sell
to the said W. J. Sherlock, or said plaintiffs, the five (5)
acres lying to the south and adjoining the said ten (10)
acres, or any part thereof, nor was the said J. H. Van
Asselt on the said 30th day of June, 1900, or at any other
time, the agent of defendants, or either of them, for the
sale of the said five (5) acres or any part of the lands of the
Van Asselt donation claim.

"(5) That on or about the 31st day of October, 1900,
the said W. J. Sherlock paid to the said J. H. Van Asselt
the sum of one hundred dollars, but that said payment was
not made on account of the purchase price of said five (5)
acre tract, nor to the said J. H. Van Asselt as agent of the
defendants, or either of them, and that said defendants
have not, nor has either of them, at any time accepted, re-
ceived or had the said sum of one hundred dollars, or any
part thereof, and that said J. H. Van Asselt prior to the
commencement of this action tendered and offered to pay
to the said W. J. Sherlock the said sum of one hundred
dollars ($100), which tender and offer was refused by the
said W. J. Sherlock.

"(6) That the said defendants have not, nor has either
of them, at any time since the 30th day of June, 1900,
ratified or confirmed or approved the said agreement men-
tioned in paragraph 2 of these findings.

"(7) That the plaintiffs, W. J. Sherlock and Bridget
Sherlock, have not nor has either of them, taken or had

possession of or made any improvements whatever upon said five (5) acre tract."

On which findings the court stated the following conclusions of law:

"(1) That a decree should be entered herein dismissing said action, and that the defendants Henry Van Asselt and Jane Van Asselt should have judgment against plaintiffs for their costs and disbursements herein. (2) That the said J. H. Van Asselt should repay to the said W. J. Sherlock the said sum of one hundred dollars ($100)."

Judgment was entered in favor of defendants in accordance with such conclusions of law, from which judgment plaintiffs prosecute their appeal to this court. After the appeal was taken Henry Van Asselt died, and his executrix, Jane Van Asselt, in her representative capacity, was substituted as a respondent herein in his stead by order of this court.

The main question presented in the record for our consideration on this appeal is one of fact: Was J. H. Van Asselt on the 30th day of June, 1900, or at any other time, authorized by respondents to execute to appellant Walter J. Sherlock the agreement, designated in the above finding of fact No. 2, for the sale of the five-acre tract in question? The testimony adduced at the trial shows, that J. H. Van Asselt, who signed the agreement, was a son of respondents; that the respondents were an aged couple, and that Henry Van Asselt, one of the respondents, was paralyzed. He did not testify in the case, and seems to have figured very little in the transaction; doing nothing further than to execute the deed to the ten acres of land contiguous to this five-acre tract, which is described in above finding No. 1.

Appellant Walter J. Sherlock testified that shortly prior to June 30, 1900, he went to the residence of respondents to ascertain who was the proper agent or party to sell the

land designated in the findings as the entire fifteen acres. Witness said: "I spoke to them about buying the place, and Mrs. Van Asselt asked me if I was buying it for somebody. I told her then, 'No'; that I was buying it for myself. She told me whatever deal I made with Bud [the son] it was satisfactory to her. I asked her then if I would pay him the money; she said 'Yes'; she wanted to save all the commission; she didn't want to put it in any real estate man's hands to sell." Witness also said that Henry Van Asselt, the other respondent, was sitting in the same room at the time. Mrs. Van Asselt on the witness stand denied this conversation and particularly that her son had any authority from either of these respondents to sell any part of this land.

Mr. Sherlock, in explaining why the deed mentioned in the findings was made out for only ten acres instead of fifteen acres, testified: "We had agreed upon the price. I told him [J. H. Van Asselt, the son] I hadn't money enough to buy and pay for the fifteen acres there and then, and he asked me how much money—if I would pay for ten acres. I told him 'Yes'; and we agreed upon the price and terms, all of us, before ever I paid any money at all." He further testified that the $100 was subsequently paid to the son in pursuance of the alleged contract for the sale of this five-acre tract, and that appellants had duly tendered $1,400, the balance of the alleged purchase price, which was refused by respondents.

On behalf of respondents, the evidence tended to show that the purchase of the ten-acre tract was a complete and distinct transaction by itself. Jane Van Asselt and her son both testified, that the latter had no authority from respondents to make this contract for the sale of this five-acre tract, or accept any money in pursuance of such agree-

ment; that the respondents refused absolutely to accept the
$100 paid by appellant Sherlock. The son swore, that he
offered to return this $100 to appellant Walter J. Sherlock
prior to this action, but that Sherlock would not accept it;
that, when he signed the above contract and receipt, it was
subject to his mother's approval, and that Mr. Sherlock was
so advised at that time; that he (J. H. Van Asselt) was
anxious that his mother should sell this land, but that she
did not approve of his acts in that behalf.

Mrs. Van Asselt in her evidence is very positive that
her son had no authority to make the alleged contract; that
she reserved the right to fix the price of the land belonging
to respondents; and that she did not want to sell this tract
at all. The evidence decidedly preponderates in favor of
respondents on the point that appellants never entered into
or had possession of this five-acre tract, or made any im-
provements thereon under their alleged contract. The prin-
cipal testimony on appellants' behalf as to the making of
the contract was given by Walter J. Sherlock. His evidence
is squarely in conflict with the evidence of respondent Jane
Van Asselt and that of J. H. Van Asselt as to the making
of the agreement, as well as to the alleged ratification of the
acts of J. H. Van Asselt, who assumed to act in behalf of
respondents.

This court has said in numerous decisions that it will not
disturb the findings of the trial court on questions of fact,
where the testimony is conflicting, unless the weight of evi-
dence is against the findings of the trial court. See *Wash-
ington Dredging & Imp. Co. v. Partridge,* 19 Wash. 62, 52
Pac. 523; *Boardman v. Hager,* 24 Wash. 487, 64 Pac.
724; *Cullen v. Whitham,* 33 Wash. 366, 74 Pac. 581.
Furthermore, this alleged contract was not executed with
the legal formalities required by the statute of frauds. It

was not acknowledged as provided in Bal. Code, § 4517. The appellants never entered into possession of this tract of land, under their agreement, in order to take the transaction in controversy out of the operation of the above statute. This matter of possession was a material issue in the present controversy, tendered by appellants, on which they assumed the burden of proof at the trial, and we think failed to establish their allegations in that regard.

The judgment is affirmed.