[No. 17527. Department One. March 8, 1923.]

HARRY L. PARR, *Respondent,* v. PACIFIC STORAGE WAREHOUSE, INCORPORATED, *et al.,*
*Appellants.*[1]

CORPORATIONS (160)—REPRESENTATION—AUTHORITY TO EXECUTE NOTE—PRESUMPTIONS. Where the manager of a corporation executed a promissory note on its behalf, it will be presumed, until the contrary is shown, that he had authority to do so.

SAME (160, 169)—AUTHORITY TO EXECUTE NOTE—EVIDENCE—SUFFICIENCY. The manager of a corporation, engaged in the operation of a warehouse and a general transfer business, is shown to have had no authority to execute a promissory note in payment of an unauthorized purchase of stock, where it appears that his duties were to look after the business generally and make collections and he had never executed notes except under special authority for a particular purpose.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered January 6, 1922, upon

[1] Reported in 213 Pac. 677.

the verdict of a jury rendered in favor of the plaintiff, in an action on a promissory note.   Reversed.

*H. W. Lueders* and *John Leo,* for appellants.

*Wesley Lloyd,* for respondent.

BRIDGES, J.—This was a suit upon a promissory note alleged to have been given by the defendant, Pacific Storage Warehouse Company, Incorporated, a corporation.   There was a judgment for the plaintiff, which was based upon the verdict of a jury in his behalf. The Pacific Storage Warehouse Company, Incorporated, has appealed.

It is first contended by the appellant that its motion for a nonsuit should have been granted.

The note was for $1,000, and was payable ninety days after date to the order of the Modern Dairy Company, and was signed, "Pacific Storage Warehouse Inc., by M. Newell." The respondent introduced the note in evidence and made some proof to the effect that M. Newell was, at the time of its execution, the manager of appellant, and that the respondent had purchased the note, before maturity, for a valuable consideration.   This was sufficient to make a *prima facie* case.   Many authorities hold that there is no presumption that the manager of a corporation has any authority to execute and deliver promissory notes on behalf of his corporation, and that the burden to show such authority is on the plaintiff.   At an early date, however, this court took an advanced view of this question and held that, where the manager of a corporation had executed a contract on its behalf, the presumption is that he has power and authority so to do.   *Carrigan v. Port Crescent Imp. Co.,* 6 Wash. 590, 34 Pac. 148.   Discussing this question, the court said:

"Under these circumstances it will be presumed that it was the contract of the corporation until the

contrary is made to appear.   When a corporation names some person as its manager, and as such allows him in large measure to control all of its business transactions, it must be held responsible for the acts of such manager in the name of the company until it has been affirmatively shown by it that as a matter of fact such acts were unauthorized.   This is, perhaps, an extension of the general rule, but, in our opinion, such extension is necessary to prevent great hardships being cast upon those who deal with corporations. The very use of the word 'manager' as applied to the officer conveys the idea to the ordinary mind that to one thus named has been committed the management of the affairs of the company and to hold that one dealing with a person so held out must, before the company can be held liable for his acts, show affirmatively that it had authorized them, would often result in great hardships.''

The doctrine of this case was approved in *Citizens' National Bank of Tacoma v. Wintler,* 14 Wash. 558, 45 Pac. 38, 53 Am. St. 890.

Under these authorities (with which we are still well satisfied), it is manifest that the respondent made a *prima facie* case and that appellant's motion for nonsuit was properly denied.

A more important question arises upon the refusal of the court to grant appellant's motion for judgment notwithstanding the verdict.

The appellant had plead, and its chief defense was, and is, that its manager, who executed the note in suit on behalf of the company, had no authority so to do. There is nothing in the respondent's testimony which even tended to show such authority, other than the presumption which we have mentioned.   The appellant's testimony conclusively shows the following state of facts:   The corporation had a president, a vice president, a secretary-treasurer and a manager.   All of the stock was owned by Mrs. S. A. Newell and her

father and mother, and they held all the offices of the corporation except that of manager. The business of the company was for the most part the operation of a warehouse and the carrying on of a general transfer business in the city of Tacoma. Mrs. Newell was the secretary-treasurer of the company and at all times was actively engaged in its affairs. Her father and mother were old and were not so active in the business. The duty of the manager was to look after the different kinds of work, the moving, storage and transfer of goods, the collection of bills, and probably some of the time he signed checks to pay the operating bills of the company. He did not have general authority to sign notes on behalf of the company, but previously to the execution of the note in question had, by a special authority given him by the trustees, executed and delivered, over a period of several years, some eight or ten notes on behalf of the corporation, payable to the Tacoma National Bank. This special authority appears in the evidence. The only other note he signed on behalf of the company was one to the Tacoma Industrial Association for $500. But the testimony shows that the company had given him express authority to execute that instrument. His authority to borrow money from the Tacoma National Bank extended only to such sums as, from time to time, were found necessary to carry on the business of the company. The corporation, in its advertisements, had named Mr. Newell as manager, and also named the other officers of the company. It had also authorized him to represent the company in the Chamber of Commerce.

The circumstances under which the note was given were these: The Modern Dairy Company, a corporation, was operating at Tacoma and had made some assertions to Mr. Newell that, if the appellant would

purchase $1,000 of its capital stock, it would turn over its drayage business to the appellant. The manager asked the secretary-treasurer of the company if they should purchase this stock and was informed that the company would have nothing to do with the purchase. It was after this conversation that the note in suit was given. Nobody connected with the appellant, other than its manager, knew that this note had been given until about time suit was brought on it. The dairy company never issued any of its stock to the appellant, or, for that matter, to its manager. Not long after the giving of the note, the dairy company became insolvent and its affairs were wound up.

The foregoing is, in substance, all of the evidence which tends to show any authority or lack of authority in the manager, Mr. Newell, to execute the note on behalf of the appellant. It is plain from this testimony, which is undisputed, that Mr. Newell, as manager, had absolutely no authority, direct or indirect, to execute the note. He was neither a stockholder nor a trustee of the appellant. By undertaking to purchase the stock of another corporation, he was manifestly going far outside of the ordinary duties of a manager. Not only does the testimony show that this note was executed without direct authority, but it shows conclusively that the appellant had not, at any time or in any way, ratified the action of its manager in making the note, or ever held him out as having authority so to do. The appellant's testimony, undisputed as it was, completely overthrows the presumption that its manager had authority to execute the note in suit, and left nothing to submit to the jury.

It is probably true that courts should be slow to nullify an instrument executed by an officer of a corporation and thus injure innocent purchasers; but, on the other hand, reasonable protection of corporations

requires that the courts should not enforce commercial paper made by officers wholly without authority.

The appellant's motion for judgment notwithstanding the verdict should have been granted. The judgment is reversed and the cause ordered dismissed.

MAIN, C. J., MACKINTOSH, HOLCOMB, and MITCHELL, JJ., concur.