[No. 6493.  Decided November 10, 1906.]

W. E. STEVENS, *Respondent*, v. ELIZABETH G. KITTREDGE et al., *Appellants*.[1]

VENDOR AND PURCHASER—SPECIFIC PERFORMANCE—MUTUALITY—PART PAYMENT—TENDER. There is no lack of mutuality upon the part of the vendee, in a contract for the conveyance of real estate, where he has paid part of the purchase money, repeatedly expressed willingness to pay the balance, and tenders the same in court.

SAME—HUSBAND AND WIFE—COMMUNITY PROPERTY—AUTHORITY. A husband cannot claim that his wife was not authorized to sell community land, where the contract was made up of telegrams, one of which he answered, a deed was executed by both in accordance with the contract, and both had full knowledge of the pending sale, which was repudiated by the wife and not by the husband.

VENDOR AND PURCHASER — CONTRACT TO CONVEY — RESCISSION BY VENDOR—DELAY OF VENDEE. Delay by the vendee to close a sale is not ground for rescission by the vendors, where the delay was caused by the vendors' failure to secure the satisfaction of a mortgage upon the property.

Appeal from a judgment of the superior court for King county, Griffin, J., entered June 9, 1906, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action for the specific performance of a contract to convey real property. Affirmed.

*H. R. Clise* and *George H. King*, for appellants.

*Ballinger, Ronald, Battle & Tennant*, for respondent.

RUDKIN, J.—This was an action for the specific performance of a contract for the sale of real property. The contract relied on consists of numerous letters and telegrams which are too voluminous to set forth in detail in an opinion. The defendants were the owners of two certain lots in the city of Seattle, and, during the period covered by the negotiations following, resided in the city of Detroit, Michigan.

[1]Reported in 87 Pac. 484.

Some time prior to September 4, 1905, George W. Dilling, a real estate agent of Seattle, wrote the defendant Elizabeth G. Kittredge concerning the sale of the two lots. Under the above date, Mrs. Kittredge wrote Dilling that the lots were for sale if a proper price could be obtained. She stated that she had been absent from Seattle for some time, that realty values had changed, and asked what the property was worth. Dilling replied, under date of September 13, informing her that certain lots in the vicinity had sold for $13,000, net, that certain other lots were for sale at $14,000, but he preferred that she should fix her own price. Mrs. Kittredge replied, under date of September 23d, that she would sell for $16,000, giving a clear title, and would consider any reasonable offer.

On November 7th, Dilling wired Mrs. Kittredge that he had an offer of $14,000 for the lots, she to pay a commission of $600. The following day the defendant R. B. Kittredge wired back that they would accept $14,000, no commission. In reply Dilling wired the defendant R. B. Kittredge that he could not raise the offer, but would reduce commission to $300. On the following day Mrs. Kittredge wired Dilling that the offer was accepted, and to make deposit with the Washington Trust Company. On the same day she wired the Washington Trust Company that she had sold Dilling the lots, and to accept deposit pending delivery of papers through the Trust Company. Dilling then notified the plaintiff that his offer had been accepted. The plaintiff paid Dilling $500 on account of the purchase price, and the amount was deposited with the Trust Company. The Trust Company receipted for the amount, the receipt setting forth the terms upon which the deal should be closed.

On receipt of the deposit, the Trust Company wired Mrs. Kittredge that the deposit had been made, and to send abstract. A letter of similar import was mailed the same day. On November 10th, Mrs. Kittredge wired the Trust Com-

pany that the abstract would be forwarded from San Francisco. On the same date she wrote the Trust Company that a Mr. Johnson of San Francisco held the abstract, as there was a mortgage on the property in favor of Miss Kittredge, a sister of her husband. She asked the Trust Company to take charge of the sale and report progress to her. On November 10th Dilling wrote Mrs. Kittredge that he had sold the lots to the plaintiff, that the plaintiff had paid $500 as earnest money, and would pay the balance of the purchase price in cash upon the receipt of a deed and abstract showing clear title. He enclosed a deed of the property to be executed by both defendants, and returned to the Trust Company. On November 11th Mrs. Kittredge wrote the Trust Company to take up a $6,000 mortgage on the property, and, when final settlement was made, to deposit balance to her credit. On November 16th she again wrote the Trust Company acknowledging receipt of the deed from Dilling, and stating that she would return same by registered mail on the following day. On the same date she also wrote Dilling acknowledging receipt of deed, and stating that she would return same, with all papers of any benefit to the intending purchaser, to the Trust Company on the day following. On November 20th Mrs. Kittredge wrote the Trust Company that she had received word from ·San Francisco that the abstract had been forwarded. She also enclosed an insurance receipt and asked the Trust Company to request the plaintiff to pay the amount due on the policy, and if he refused, to collect from the Insurance Company. On November 18th Dilling received the abstract from the Trust Company. The abstract was thereupon brought down to date, and delivered to the attorneys for the purchaser on November 24th. On November 25th, the attorneys completed their examination of the abstract and reported the title clear, except a street grade assessment, and the mortgage to Miss Kittredge above referred to.

On November 27th the plaintiff notified Dilling that he was ready to pay the balance of the purchase price and close the sale, but upon inquiry from the Trust Company it was learned that the mortgage release had not yet been received. Again, on November 29th, the plaintiff announced his readiness to close the deal, but still the release had not come. A similar offer was made on December 4th with the same result, and the plaintiff thereupon offered to pay the entire balance of the purchase price to the Trust Company, receive the deed, and trust to the Trust Company to place the release of mortgage on record as soon as it was received, but this the Trust Company refused to do. Finally, on December 7th, Mrs. Kittredge wired the Trust Company that if the sale was not closed to hold the papers subject to her order. After further negotiations, not necessary to be detailed here, the defendants refused to perform the contract or deliver the deed, and the plaintiff brought this action for specific performance, averring his readiness to pay the balance of the purchase price. The court below, on the foregoing stipulated facts, entered judgment in favor of the plaintiff, and from this judgment the present appeal is prosecuted.

While this mass of correspondence would seem to leave little room for fraud or perjury, yet the appellants earnestly insist that there is no contract which they are obligated to perform. We will therefore consider briefly the different objections urged in their behalf. It is first contended that there is a lack of mutuality in the contract, that the respondent was not obligated to pay the purchase price and therefore the appellants are not obligated to convey. The respondent has paid a part of the purchase price, has repeatedly expressed his readiness to pay the balance, and now tenders the same into court. This supplies any lack of mutuality in the contract under the ruling of this court. *Western Timber Co. v. Kalama River Lumber Co.,* 42 Wash. 620, 85 Pac. 338; *Conner v. Clapp,* 42 Wash. 642, 85 Pac. 342.

It is next contended that the appellant R. B. Kittredge at least is not bound. While the property is presumed to be community, and the negotiations were conducted almost entirely by the wife, yet it will be remembered that the husband answered a telegram sent to the wife in relation to the sale, and the wife answered a similar telegram sent to the husband. Husband and wife executed a deed and sent it to the Trust Company for delivery, and finally it was the wife and not the husband who repudiated the sale. Both husband and wife unquestionably had full knowledge of the pending negotiations, and each fully ratified the acts of the other. *Washington State Bank v. Dickson,* 35 Wash. 641, 77 Pac. 1067.

The final contention is that the respondent did not perform the contract as soon as he should. The cause of the delay is so apparent from the foregoing statement that argument or discussion is unnecessary. There is no merit in the appeal, and the judgment is affirmed.

MOUNT, C. J., DUNBAR, ROOT, CROW, FULLERTON, and HADLEY, JJ., concur.